**[Cite as *Phillips v. Watkins*, 2026-Ohio-2459.]**

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

BRANDON PHILLIPS

    Appellant

    v.

MARISSA WATKINS

    Appellee

C.A. No.    2025CA0024-M

APPEAL FROM JUDGMENT
ENTERED IN THE
WADSWORTH MUNICIPAL COURT
COUNTY OF MEDINA, OHIO
CASE No.    CVH2400631

DECISION AND JOURNAL ENTRY

Dated: June 29, 2026

---

STEVENSON, Judge,

**{¶1}** Plaintiff-Appellant Brandon Phillips ("Phillips") appeals from the judgment of the Wadsworth Municipal Court that found in favor of Defendant-Appellee Marissa Watkins ("Watkins") on Phillips' claim for return of personal property, a dog named Bella. For the reasons set forth below, we affirm.

I.

**{¶2}** In August 2024 Phillips filed a small claims action against Watkins in the Wadsworth Municipal Court for possession of Bella. Watkins counterclaimed for civil assault and compensatory damages. Upon learning that Phillips was not seeking money damages and that his claim was solely for replevin (repossession of his personal property), the court instructed him to move to transfer the case to the civil docket because the jurisdiction of the small claims court extended only to claims for money damages. The court granted Phillips' motion to transfer and the matter was placed on the civil docket.

{¶3} The matter proceeded to a three-day bench trial. Phillips testified in his case in chief and called two witnesses on his behalf, his friends Alanna Coulson and Michelle Rigard. Watkins testified in her case and called her mother, Janeen Warner, as a witness. Both sides offered exhibits into evidence and the court took the matter under advisement.

{¶4} Based on the trial transcript the court heard the following testimony and evidence. The parties were living together in a decade-long romantic relationship. On October 24, 2020, Ms. Warner drove Phillips and Watkins to the Berlin Pet Store where Phillips purchased Bella. Ms. Warner was present during the purchase. Phillips paid for Bella with his credit card and registered Bella's microchip identification implant in his name. According to Watkins, Phillips bought Bella for her as a birthday gift and was his way of apologizing for getting rid of her cat by taking it to an animal shelter without her permission. Watkins' birthday is October 19. Ms. Warner corroborated Watkins' story and testified that she heard Phillips tell Watkins that Bella was her birthday gift. Phillips denied that Bella was a birthday gift and claimed that he took Watkins skydiving for her birthday. Phillips testified that he purchased Bella for Watkins as a substitute for an engagement ring as he did not want to get married or have children together. Watkins testified that Phillips never said the skydiving trip was a birthday gift and referred to a post on Phillips' Instagram page stating that Bella was a birthday gift.

{¶5} The parties resided together with Bella until August 2021 when they broke up. During the time that they lived together, Watkins was Bella's primary caretaker and paid for food, vet bills, vaccinations, and grooming, as Phillips was unemployed during that time. Phillips provided a few receipts for dog food that he bought while Watkins was at work. When the parties broke up, Phillips told Watkins he was moving and taking Bella with him. He claims that it was the parties' agreement that if they ever broke up, Bella was his dog and would go with him.

Watkins denies that they ever discussed that. Out of fear that Phillips was going to take Bella, Watkins left the parties' apartment with Bella in the middle of the night and went to her parents' home where she has lived since that time.

{¶6} In the days that followed, Phillips repeatedly attempted to call/text Watkins and Ms. Warner. He eventually contacted the police who came to Ms. Warner's residence to recover Bella. Upon learning from Watkins that Bella was a gift, the officer advised Phillips that this was a civil matter and that he would have to take Watkins to court. About a week later, another officer came to Ms. Warner's residence with Phillips, and this time Phillips had the purchase receipt for Bella. That officer directed Watkins to return Bella to Phillips. Although Watkins attempted to explain once again that Bella was a gift, the officer told her to return Bella and that she would have to take Phillips to court.

{¶7} For the next two and a half years, Phillips had possession of Bella but continued to contact Watkins and arranged for her to spend time with Bella, telling Watkins that Bella "wants to see her mommy[.]" The parties met up approximately 10 times during that period with Bella and Watkins' other dog. Phillips was homeless most of that time and lived in rental trucks, a tent, or his car, and occasionally resided with Ms. Rigard. Watkins was devastated that Phillips took Bella and had to undergo counseling for her depression and anxiety. Watkins was worried about Bella being in Phillips' care, fearing that he did not have the resources to properly care for her. Ms. Warner corroborated Watkins' testimony that she was in counseling due to the stress of this situation.

{¶8} Watkins did not attempt to reclaim Bella because she did not have money for an attorney and wanted to move on from Phillips' manipulation and harassment. The only reason she gave Bella back to Phillips was because the police directed her to do so. According to Watkins,

Phillips was using Bella to manipulate her into reigniting their romantic relationship by making her feel guilty.

{¶9}   In November 2023, Phillips came to Watkins' place of work with Bella, announced that they were moving to Boston, Massachusetts, and said goodbye. In early March 2024, Phillips' father called Watkins to inform her that Phillips was in jail in Boston and had been charged with assault and battery of a minor. He asked Watkins if she could pick up Bella at an animal shelter where Bella had been placed after Phillips' arrest. A few days later, Watkins and Ms. Warner drove to the Swansea, Massachusetts Animal Shelter and Bella was released to Watkins upon Phillips' signature on a release form.

{¶10}   Watkins returned to Ohio with Bella and began caring for her again, taking her to the vet and groomer. Bella was very matted and had to be shaved down to her skin. Since that time, Watkins has paid for all of Bella's expenses and registered Bella as an emotional support animal at the recommendation of her counselor.

{¶11}   Phillips was released from jail on July 29, 2024. Two days later he arrived at Watkins' residence with the police to retrieve Bella, claiming that Watkins agreed to give Bella back when he returned to Ohio. Watkins denied ever agreeing to that. This time, upon learning from Watkins that Bella was a gift, the officer advised Phillips that this was a civil matter and he would have to file suit against Watkins for the return of Bella. Watkins got Bella microchipped in her name and filed a civil stalking protection order against Phillips that was ultimately denied. As of the trial, Watkins was still in counseling due to the stress of her relationship with Phillips over Bella.

{¶12}   Both parties claimed ownership of Bella at trial. Watkins claimed Bella was a gift from Phillips that vested her with rightful ownership. Phillips claims that he has been the legal

owner of Bella since October 2020 as evidenced by his bill of sale, receipts reflecting dog food purchases, and his record of caring for her continuously while he had exclusive possession between August 2021 and March 2024. Phillips alleged that Watkins had no documentation to support her claim of ownership as her only evidence was their verbal conversations. Phillips further supports his claim with the fact that Watkins took no action to reclaim Bella after their break-up despite her allegation that she was devastated and anxious without Bella.

{¶13} The trial court ruled in favor of Watkins, concluding that Phillips "failed to meet his burden of proof as to ownership of Bella. . . . [and] that Bella was a gift to [Watkins] and [Watkins] is the owner of Bella[.]" Phillips timely appealed and sets forth four assignments of error for our review. Watkins' counterclaim was denied but she did not appeal that decision.

II.

## FIRST ASSIGNMENT OF ERROR:

**THE FINDINGS OF FACT AND CONCLUSIONS OF LAW ARE NOT PROPERLY BEFORE THE COURT AND ARE NOT FINAL AND APPEALABLE.**

{¶14} In this assignment of error, Phillips argues that there is no final appealable order in this case because the findings of fact and conclusions of law attached to the court's judgment entry are not signed by the trial judge and do not contain a timestamp by the clerk. He maintains that pursuant to App.R. 9, the record on appeal consists of "[t]he original papers and exhibits thereto filed in the trial court," and therefore, any findings of fact and conclusions of law that are not journalized by the trial clerk are outside the record and not properly before the court.

{¶15} In its final judgment entry, the trial court stated as follows:

Upon consideration of the evidence presented, the Court rules in favor of . . . [Watkins].

ORDERS: The case is dismissed at [Phillips'] costs, [Watkins'] Counterclaim for $6000.00 is denied. Findings of Fact and Conclusions of Law are attached hereto.

That judgment entry was signed by the trial judge and time-stamped. Attached to the judgment entry was a six-page document entitled "Findings of Fact & Conclusions of Law[.]"

**{¶16}** This Court has already ruled on this matter. After filing the instant appeal, Phillips moved for a stay and to remand the case to the trial court, arguing that the trial court had not issued a final order. In a journal entry filed on November 3, 2025, we ruled that:

> the trial court entry dismissing the complaint and referring to "the attached findings of fact and conclusions of law" is itself a final order that was both signed by the judge and journalized. Therefore, the motion to stay and remand is denied.

**{¶17}** Phillips filed his merit brief on November 24, 2025, twenty-one days after our decision denying his motion for stay and remand. Therefore, he is essentially asking this Court on appeal to reconsider our decision under App.R. 26(A)(1)(a) (addresses applications for reconsideration of "any cause or motion submitted on appeal."). We review an application for reconsideration to see if it calls to our attention an obvious error in our decision or if it "raises an issue that was not properly considered by [this Court] in the first instance." *Garfield Hts. City School Dist. v. State Bd. of Edn.*, 85 Ohio App.3d 117, 127 (10th Dist. 1992).

**{¶18}** First, Phillips' request for reconsideration is untimely under App.R. 26(A)(1)(a) which requires that it be made in writing no later than ten days after mailing and docketing of the order in question. Second, Phillips has failed to demonstrate an obvious error in this Court's decision or raised an issue that we did not properly consider. Phillips' appellate brief reads verbatim to the arguments he made in his original motion to stay and remand the case. He merely reiterates those same arguments on appeal. In addition, Phillips has not cited any legal authorities stating that findings of fact and conclusions of law that are incorporated by reference into an otherwise final order are not part of that order for purposes of finality and appeal. *See Hall v.*

*Waseleski*, 2025-Ohio-2552, ¶ 19 (9th Dist.) (appellant fails to meet his burden on appeal under App.R. 16(A)(7) when its brief does not include citations to the authorities and statutes on which appellant relies). Therefore, he has not demonstrated an obvious error in this Court's decision. It is clear from the plain language of the trial court's journal entry that the findings of fact and conclusions of law attached thereto were intended to be part and parcel of its final judgment entry.

{¶19} Based on the foregoing, Phillips' first assignment of error is overruled.

**SECOND ASSIGNMENT OF ERROR:**

**APPELLANT IS THE ORIGINAL OWNER OF THE PROPERTY AND THE EVIDENCE WAS NOT SUFFICIENT TO PROVE A TRANSFER CONSISTENT WITH R.C. 955.11(B), WHICH GOVERNS THE TRANSFER OF DOGS.**

**THIRD ASSIGNMENT OF ERROR:**

**WITHOUT A TRANSFER CERTIFICATE, THE TRIAL COURT'S ORDER THAT THE PROPERTY WAS A GIFT, AND THEREFORE APPELLEE IS THE OWNER, IS CONTRARY TO LAW[.]**

**FOURTH ASSIGNMENT OF ERROR:**

**THE TRIAL COURT HAD NO DISCRETION TO IGNORE BINDING PRECEDENT.**

{¶20} We will address Phillips' second, third, and fourth assignments of error in a consolidated fashion as they raise essentially the same issue.

{¶21} In its ruling in favor of Watkins, the trial court first recited R.C. 955.11(B), which states in relevant part that "[u]pon the transfer of ownership of any dog, the seller of the dog shall give the buyer a transfer of ownership certificate that shall be signed by the seller." However, the court then noted that R.C. 955.11(B) did not address a situation where, as here, there was no certificate of ownership and ownership was allegedly gifted. As such, the court turned for guidance to decisions in similar cases that considered other factors relating to the parties' claims. After outlining the parties' respective testimonies and evidence and applying the law to the facts, the

court found that there was competent credible evidence that Bella was a gift from Phillips. The court noted in particular that Watkins' story was corroborated by her mother's testimony; that Watkins told the police officers on both occasions (September 2021 and July 2024) that Bella was a gift; and that when Watkins was in possession of Bella, she was her primary caretaker and paid for vet bills, her food, and grooming expenses. The court also found that Watkins never voluntarily returned Bella to Phillips and that her "inaction to recover Bella is explained by [her] anxiety from the relationship which the court finds credible as well as her reliance on the police officer's directive to return Bella."

{¶22} In reaching its decision, the trial court also distinguished this case from *Eltibi v. Kocsis*, 2021-Ohio-2911 (9th Dist.), wherein we applied R.C. 955.11(B). *Eltibi* involved an adoption contract from the Humane Society that established the plaintiff's ownership, and under that contract, transfer of ownership was prohibited without permission from the adoption agency. *Id*. at ¶ 17. The plaintiff in *Eltibi* "was not authorized to give the dog to someone else" under the contract of ownership. *Id*. at ¶ 18. Here, the trial court pointed out that "[n]otably the present case is distinguishable in that it involves a claim that the dog was gift and there was no contract of ownership as there was in *Eltibi*."

{¶23} Phillips argues that the plain language of R.C. 955.11(B) requires that a certificate of transfer be executed regarding ownership of a dog, and that without that certificate of transfer, the transfer of Bella, even as a purported gift, is not effective. He maintains that he was the original owner of Bella and that the evidence was insufficient to prove a transfer to Watkins under R.C. 955.11(B) because no certificate of transfer exists. He further argues that there is no evidence of record that he gifted Bella to Watkins or abandoned his ownership interest in Bella. Under his

fourth assignment of error he argues that the trial court erred in failing to follow this Court's decision in *Eltibi* which he asserts is controlling precedent on this issue.

{¶24}   We note preliminarily that throughout the trial the parties and the court treated this case as a replevin action. Phillips frequently referred to his claim as one in replevin, and Watkins defended Phillips' claim on the basis that Phillips purchased Bella for her as a gift. During closing arguments, Phillips stated that the release he signed authorizing Watkins to pick up Bella when he went to jail did not transfer ownership, but rather, was just a temporary measure until he got back to Ohio. At no time did he argue that R.C. 955.11(B) applied and required a certificate of transfer of ownership in order for Watkins to prove her ownership of Bella as either a transfer or a gift. Furthermore, Watkins never testified nor presented any evidence that the basis of her ownership claim was a transfer of ownership under R.C. 955.11. Her claim of ownership was based solely on the fact that Phillips gave Bella to her as a gift on the day he purchased Bella from the pet store. Accordingly, Phillips has not preserved for appellate review the issue of the requirement of a transfer of ownership certificate under R.C. 955.11(B) because he failed to properly raise it in the trial court. *In re B.B.*, 2003-Ohio-3314, ¶ 7 (9th Dist.) citing *State v. Childs*, 14 Ohio St.2d 56 (1968), paragraph three of the syllabus.  However, even if he had done so, for the reasons set forth below, he still cannot prevail.

{¶25}   In reaching its decision, the trial court relied primarily on two cases, *Schneider v. Schneider*, 2008-Ohio-4495 (9th Dist.), and *Butera v. Beesler*, 2023-Ohio-2257 (11th Dist.), wherein the Courts addressed whether a dog was gifted to another for purposes of determining ownership without consideration of a requirement for a certificate establishing ownership or transfer of ownership. Both cases are similar to the instant case and are instructive in resolving this matter.

{¶26} In *Schneider,* decedent's former wife brought a replevin action against the decedent's parents to recover possession of two dogs owned by the decedent and wife. *Id.* at ¶ 1. Wife and decedent were separated and pursuing divorce at the time of decedent's death. *Id.* at ¶ 3. Wife's claim was that during the parties' separation, her in-laws were merely caring for the dogs while the decedent was at work or not home at night. *Id.* at ¶ 7. The in-laws claimed that their son gave them the dogs before he died. *Id.* at ¶ 5-6. The trial court ruled in favor of the in-laws, finding that the dogs were gifts from their son. *Id.* at ¶ 11. We reversed, concluding that the trial court's decision was not supported by competent, credible evidence and was in violation of orders in the domestic relations court prohibiting the transfer of joint property. *Id.* at ¶ 20. Most saliently, our analysis of the parties' testimony and evidence was based solely on whether Wife proved her replevin claim and was entitled to have possession of the dogs. *Id.* at ¶¶ 15-20. There was no analysis under R.C. 955.11(B) and any requirement of a certificate of transfer of ownership.

{¶27} In *Butera,* the facts are similar to the instant case. The parties were in a romantic relationship and Beesler purchased a dog. *Id.* at ¶ 4. Butera alleged that the dog was a birthday gift to him from Beesler and testified that he named the dog, took it to its vet appointments, and shared expenses for the dog with Beesler. *Id.* He provided testimony from others who saw him with the dog frequently and heard him say in Beesler's presence that the dog was a gift. *Id.* at ¶ 6-7. Beesler denied that the dog was a gift and testified that Butera did not want the dog and had arranged for a friend to look after it. *Id.* at ¶ 8. Beesler claimed that she gave Butera a watch for his birthday. *Id.* at ¶ 9. When the couple separated, Beesler shared the dog with Butera for a short time but soon stopped doing so and blocked his number. *Id.* at ¶ 8. Butera filed a replevin action against Beesler for recovery of possession of the dog. *Id.* at ¶ 2. The trial court ruled in Butera's favor and Beesler appealed. *Id.* at ¶ 14-15.

{¶28} As in the present matter, Beesler's sufficiency argument was that regardless of Butera's evidence of ownership and whether the dog was a gift, the court could not conclude that Butera owned the dog because there was no certificate of transfer of ownership to him under R.C. 955.11(B). *Id*. at ¶ 22. However, the Eleventh District determined that the evidence relating to whether the dog was a gift could establish ownership in the absence of a contractual provision prohibiting it. *Id.* at ¶ 27. The *Butera* Court distinguished its facts from those in *Eltibi,* reasoning that the statute was not determinative of ownership in a replevin action where there was no document transferring ownership. *Id*. at ¶ 28. On that point, the Court noted that unlike the facts in *Butera*, *Eltibi* involved an adoption contract as evidence of plaintiff's ownership, and under that contract plaintiff was not permitted to transfer ownership without the permission of the Humane Society and was required to return the dog to the Humane Society. *Id.* The *Butera* Court determined that R.C. 955.11(B) does not contemplate a situation where ownership is gifted and proceeded with an analysis of whether the trial court's decision to return the dog to Butera was against the weight of the evidence. *Id.* at ¶ 29, 36-40.

{¶29} We agree with the Eleventh District in *Butera* that R.C. 955.11(B) does not guide our analysis in determining Phillips' replevin claim and is inapplicable here because no certificate of transfer was created in the first instance. Like *Butera*, this case is distinguishable from *Eltibi* where a certificate of ownership prohibiting transfer was involved. Therefore, whether the evidence was sufficient to prove a transfer through a transfer of ownership certificate under R.C. 955.11(B) is not the question before us as Phillips alleges. The issue before us is whether the trial court's decision that Phillips did not meet his burden of proof on his replevin claim and that Bella was a gift to Watkins was against the manifest weight of the evidence. *See Butera* at ¶ 36-40; *see also Schneider*, 2008-Ohio-4495, at ¶ 12-20 (9th Dist.).

{¶30} "Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St. 2d 279 (1978), syllabus. In reviewing the manifest weight of the evidence, "this Court 'must determine whether the trier of fact, in resolving evidentiary conflicts and making credibility determinations, clearly lost its way and created a manifest miscarriage of justice.'" *Kim v. Kim*, 2020-Ohio-22, ¶ 10 (9th Dist.), quoting *Boreman v. Boreman*, 2002-Ohio-2320, ¶ 10 (9th Dist.). In so doing, "we must be mindful of the presumption in favor of the finder of fact." *Kim* at ¶ 10. "Only in the exceptional case, where the evidence presented weighs heavily in favor of the party seeking reversal, will the appellate court reverse." *Boreman* at ¶ 10.

> Replevin is [a]n action whereby the owner or person entitled to repossession of goods or chattels may recover those goods or chattels from one who . . . wrongfully detains [them]. Replevin is a claim for wrongful detention of goods, but it does not require an unlawful taking. The action 'is strictly a possessory action, and it lies only in behalf of one entitled to possession against one having, at the time the suit is begun, actual or constructive possession and control of the property. *The plaintiff in a replevin action is required to prove that he is entitled to possession of the property* and that, at the time the [suit] was filed, the defendant had actual or constructive possession and control of [it].

(Emphasis added.) (Internal quotations and citations omitted.) *Schneider* at ¶ 14.

{¶31} In defense of Phillips' replevin action, Watkins asserted that Phillips gave Bella to her as a gift. The essential elements of a valid inter vivos gift are:

> an intention on the part of the donor to transfer the title and right of possession of the particular property to the donee then and there, and . . . a delivery by the donor to the donee of the subject-matter of the gift to the extent practicable or possible. . . with relinquishment of ownership, dominion, and control over it.

*Bolles v. Toledo Trust Co.*, 132 Ohio St.21 (1936), paragraph one of the syllabus.

{¶32} As the plaintiff, Phillips had the burden of persuading the trial court that he was entitled to possession of Bella. *Schneider* at ¶ 14, citing *Mulhollen v. Angel*, 2005-Ohio-578, ¶ 23

(10th Dist.). While Watkins had no burden of proof in this matter, she presented competent, credible evidence that Bella was a gift from Phillips, and as such, rebutted Phillips' evidence of ownership. The parties had two different stories about which one of them owned Bella. Phillips had a purchase receipt, some photographs showing him with Bella, and a few receipts showing he paid for dog food as proof that he was the owner of Bella. He also relied heavily on the fact that he was in exclusive possession of Bella from September 2021 through March 2024 and that Watkins did not attempt to reclaim her. Watkins' testimony was that Phillips gave her Bella as a birthday gift when he purchased Bella in October 2020. Watkins' testimony was corroborated by her mother, who was present at the purchase, and by the statements Watkins gave to the police on three occasions. Watkins took possession of Bella at the time of purchase and again after Phillips released Bella to her when he went to jail. During her time of possession, Watkins cared for Bella, paid for her expenses, and never voluntarily relinquished control. The only reason she gave Bella to Phillips in September 2021 was that she was directed to do so by the police and to avoid further manipulation and harassment from Phillips after years of experiencing anxiety and depression because of his mistreatment.

{¶33} The trial court found Watkins' evidence more credible than Phillips' evidence. As the trier of fact, the trial court was in the unique position of making that credibility determination and resolving any conflicts in the evidence. *Kim*, 2020-Ohio-22, at ¶ 10 (9th Dist.). Based on the record before us, we cannot find this is an exceptional case where the evidence presented weighs heavily in favor of Phillips' replevin claim. This Court will not overturn a judgment as being against the manifest weight of the evidence simply because the trier of fact chose to believe one party's version of events over another version. *State v. Barger*, 2016-Ohio-443, ¶ 29 (9th Dist.).

**{¶34}** For the foregoing reasons, the second, third, and fourth assignments of error are overruled.

III.

**{¶35}** Accordingly, based on the foregoing, Phillips' assignments of error are without merit and overruled. The judgment of the Wadsworth Municipal Court is affirmed.

Judgment affirmed.

————

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Wadsworth Municipal Court, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

SCOT STEVENSON
FOR THE COURT

HENSAL, P. J.
SUTTON, J.
CONCUR.

APPEARANCES:

MICHELA HUTH, Attorney at Law, for Appellant.

MARK F. GRAZIANI, Attorney at Law, for Appellee.